ANDREW R. HADEN
Attorney for the United States
Acting under Authority Conferred by 28 U.S.C. § 515
JOSEPH S. GREEN (Cal. Bar No. 251169)
GEORGE V. MANAHAN (Cal. Bar No. 239130)
JOSHUA C. MELLOR (Cal. Bar No. 255870)
Assistant United States Attorneys
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-6955
Email: joseph.green@usdoj.gov

Attorneys for United States of America


Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>BRIAN JAVAADE MESHKIN (1),<br>DANIEL RONALD KENDALL (5),<br>ABRAHAM ALAN CHERRICK (6),<br>LESTER ALAN ZUCKERMAN (7)<br>ASSAF TZUR GORDON (8),<br>OSSAMA ANTOINE JAWHAR (9),<br><br>            Defendants. | No. 8:21-CR-0112-JLS<br><br>GOVERNMENT'S NOTICE OF MOTION AND MOTION FOR A JUDICIAL FINDING THAT PARTIES MAY VIEW 45 DOCUMENTS IN DISCOVERY DUE TO LACK OF ATTORNEY-CLIENT PRIVILEGE<br><br>[Related filings: 1) Government's Notice Of Lodging Of 45 Documents Defendant Brian Javaade Meshkin Asserts Are Attorney-Client Privileged; and 2) Government's Motion For Order And Order Sealing Its Motion To Seal And Notice Of Lodgment]<br><br>Judge: Hon. Josephine L. Staton<br>Date: Thursday, December 15, 2022<br>Time: 1:30 p.m.<br>Place: Courtroom 8A<br>Time Est: 10 minutes |

     Plaintiff United States of America, by and through its counsel from the United States Attorney's Office for the Southern District of

California, Assistant United States Attorneys Joseph S. Green, George V. Manahan, and Joshua C. Mellor, hereby files its motion for the Court to determine communications between the now-defunct corporation Proove Biosciences, Inc., and its former counsel, are not privileged. Counsel for the Government have met and conferred with defendants regarding the substance of this motion.

Dated: November 21, 2022          Respectfully submitted,

                                  ANDREW HADEN
                                  Attorney for the United States


                                  /s/ *George Manahan*
                                  JOSEPH S. GREEN
                                  GEORGE V. MANAHAN
                                  JOSHUA C. MELLOR
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

#### A. The Proove Email

In June 2017, Proove Biosciences, Inc. (Proove) voluntarily produced email files for seventeen of its employees to the Government in connection with the Government's investigation of this case (the "Proove emails"). The files were the complete email folders for these employees and had not been filtered for privileged materials by Proove before they were turned over to the Government. Proove provided the files to the Government on the condition that the company was not waiving any privileges that might otherwise apply.

The Government used a filter team to segregate potentially privileged communications from the Proove emails based on a list of law firms and lawyers Proove communicated had represented the company. After the filter team segregated the emails, the prosecution team was provided a filtered set of email for use in its investigation. The prosecution team was not given access to the materials segregated for privilege. The filtered set of materials were produced in discovery following the indictment in this case. Additionally, defendant Brian Meshkin, who was formerly the CEO of Proove, received a complete set of all the unfiltered Proove emails.

After the Government produced the filtered Proove emails in discovery, multiple defendants requested that the Government reproduce the emails in a different format. Due to the substantial size of the Proove emails, the first filter review and production was done by converting the email files to text files, making the documents easier to search for privilege. The defendants requested a new production with images, tiff files, natives, and other supporting e-discovery files.

The Government accommodated the request, however, the only way to reproduce the production set with the requested file types was for the Government to reprocess the Proove email from the beginning. Using a similar process, a different filter team conducted a second review of the original Proove email and provided a second production set to the prosecution team, which was in turn provided to all defendants in discovery.

### B. The Status of Proove Biosciences, Inc.

In August 2017, *Leavitt Equity Partners, I, L.P.*, an investor in Proove Biosciences, Inc. petitioned a Utah state court to appoint a receiver to manage Proove. The court granted the request and appointed Michael Thatcher as a Receiver to manage the company. *Leavitt Equity Partners, I, L.P., v. Proove Biosciences, Inc.*, 2020 WL 2885026 (Utah Dist. Ct. Jan. 21, 2020). The Receiver investigated the company and determined that the best means to maximize the value of Proove was the liquidation of the company. *Id.* The Receiver "liquidated the Company's assets and wound down the Company." *Id.* On January 23, 2020, the Utah state court approved the Receiver's Final Report and Account indicating Proove was "administratively insolvent with no assets or funds remaining" and entered an order relieving the Receiver and dismissing the receivership with prejudice. *Leavitt Equity Partners, I, L.P., v. Proove Biosciences, Inc.*, 2020 WL 2122155 (Utah Dist. Ct. Jan. 23, 2020).

According to the attorneys representing him in this criminal case, Defendant Brian Meshkin had previously resigned as CEO of Proove Biosciences on August 18, 2017. Following his resignation, the Receiver sued Meshkin to recover funds from the Receivership Estate. *Leavitt Equity Partners, I, L.P., v. Proove Biosciences, Inc.*, 2020 WL 2885026

(Utah Dist. Ct. Jan. 21, 2020).The parties settled after Meshkin agreed to make payments back to the Receivership Estate. *Id.*

C. AUSA Exposure to Potentially Privileged Email

On September 1, 2022, AUSA George Manahan reviewed records that had been produced in discovery Bates marked Skidsted_0125348 to 125458, which included legal opinion letters from the Artz Law Firm to Proove. Since similar legal opinion letters were shared with, among others, National Spine and Pain Centers (NSPC), as evidenced by their appearance in documents provided to the Government by NSPC and placed in discovery, it was not immediately apparent to AUSA Manahan that not all of the Artz opinions in the above-cited Bates number range were among those disclosed to NSPC or other 3rd parties. Subsequently, AUSA Manahan learned there had been prior discussions between the Government and Mr. Meshkin's attorneys, during which Mr. Meshkin maintained that there was still a privilege for communications between attorneys for Proove Biosciences, Inc. and their attorneys.[1]

On September 2, 2022, AUSA Manahan emailed all parties that he had reviewed the records cited above, and indicated that given Mr. Meshkin's position, all parties should not review Skidsted_0125348 to 125458 until the issue was resolved. He also indicated that the filter attorney who previously conducted the second filter review would re-review whether any other potentially privileged documents had been placed in discovery. Finally, he provided legal authority supporting the Government's position that, given that Proove is now defunct without a successor-in-interest, any attorney-client privilege formerly held by Proove ceases to exist,

---

[1] AUSA Manahan joined the prosecution team in the Spring of 2022, after those discussions.

3

On September 29, 2022, the filter attorney emailed all parties that he found 45 documents in discovery, identified by Bates number, which were similarly potentially privileged if Proove's attorney-client privilege still existed. (Those 45 documents included those previously identified by AUSA Manahan.) The parties were asked not to review any of those documents until the privilege issue was resolved. Since then, the parties have communicated a number of times, but have not been able to resolve the issue.

**II. ARGUMENT**

    **A. Since Proove Biosciences, Inc. Is Defunct Communications Between It And Its Attorneys Are No Longer Privileged[2]**

        1. <u>Entities Who Cease To Operate Lose Any Privilege Over Attorney-Client Communications</u>

Rule 501 of the Federal Rules of Evidence provides that federal common law governs the availability and scope of evidentiary privileges

---

[2] A separate qualified privilege exists for documents protected by the work product doctrine. "To qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" *Am. C.L. Union of N. California v. United States Dep't of Just.*, 880 F.3d 473, 484 (9th Cir. 2018); *see also Hickman v. Taylor*, 329 U.S. 495, 510-12 (denying attempt to discover notes of witness interviews taken by defendant's attorney in preparation for trial without showing of any special need for the notes). A document is "prepared 'in anticipation of litigation' and thus eligible for work product protection . . . if 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'" *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004). "The 'because of' standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *Id.* at 908.

Here, the relevant documents in the United States possession were created well before they could have been prepared because of the prospect of litigation. Therefore, the work product doctrine is not relevant to the issues raised in this motion.

4

in actions where federal law supplies the rules of decision, including the attorney-client privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). "Whether information is covered by the attorney-client privilege is determined by an eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.*

"Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). "The burden is on the party asserting the privilege to establish all the elements of the privilege." *United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002), as amended on denial of reh'g (Mar. 13, 2002).

The attorney-client privilege may attach to entities such as corporations similarly to how it may attach to individuals. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985); *Virtue Glob. Holdings Ltd. v. Rearden LLC*, No. 15-CV-00797-JST, 2016 WL 1588268, at *3-*5 (N.D. Cal. Apr. 20, 2016); *United States v. Ferrell*, No. CR07-0066MJP, 2007 WL 2220213, at *2 (W.D. Wash. Aug.

5

1, 2007). Such privileges belong to the entity rather than to individuals associated with the entity. *See United States v. Plache*, 913 F.2d 1375, 1381 (9th Cir. 1990); *Calendar Rsch. LLC v. StubHub, Inc.*, No. CV 17-4062 SVW (SSX), 2019 WL 11276365, at *5 (C.D. Cal. May 6, 2019). While solvent, however, individuals empowered to act on behalf an entity, such as its officers and/or directors, have the authority to determine whether the entity chooses to assert or waive its privilege. *See Commodity Futures Trading Comm'n*, 471 U.S. at 348.

When faced with a question of who, if anyone, has authority to assert or waive the privilege of an entity that is no longer operational, courts distinguish between: "(1) a dissolved corporation that is winding up its processes, (2) a corporation that is no longer in existence, for which a successor, trustee, or other similar representative holds the privilege, or (3) a corporation which no longer exists and for which there is no successor, trustee, or other similar representative." *Virtue Glob. Holdings Ltd. v. Rearden LLC*, No. 15-CV-00797-JST, 2016 WL 1588268, at *3-*5 (N.D. Cal. Apr. 20, 2016); *see also John Doe Corp. 1 v. Huizenga Managers Fund, LLC*, 188 N.E.3d 1259, 1279-81, appeal denied sub nom. *Doe Corporation v. Huizenga Managers Fund, LLC*, 183 N.E.3d 879 (Ill. 2021) ("Whether a corporation can assert the attorney-client privilege depends on 'whether the corporation is 'dead' as opposed to being in some other state, such as a windup phase, bankruptcy or liquidation, or having merged into or been acquired by a successor.'"); *Affiniti Colorado, LLC v. Kissinger & Fellman, P.C.*, 461 P.3d 606, 616-17 (Colo. App. 2019) ("The key fact is whether the corporation is 'dead' as opposed to being in some other state, such as a windup phase, bankruptcy or liquidation, or having merged into or been acquired by a successor.");

*Melendrez v. Superior Ct.*, 215 Cal. App. 4th 1343, 1353-54 & n.14 (2013) ("In considering the holder of the privilege of a corporation no longer in operation, it is important to recognize the distinction between a *dissolved* corporation, and one *no longer in existence*.") (emphasis in original).

The first scenario, determining whether the privilege survives while a corporation is winding up its processes, requires an analysis of the applicable law to the winding-up entity, how functional the entity is during the windup process, and whether there is a party who has a relevant interest in asserting or waiving the privilege during those proceedings. *See, e.g.*, *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-354 (1985) *Wallis v. Centennial Ins. Co.*, No. 2:08-CV-2558 WBS AC, 2013 WL 434441, at *5-*9 (E.D. Cal. 2013) (collecting cases concluding both that winding-up entities lose their former attorney-client privileges and that under appropriate circumstances, the privilege may continue to survive).

Under the second scenario, there is another individual or entity to control the former entity's privilege. For instance, "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Commodity Futures Trading Comm'n*, 471 U.S. at 349. In such situations the privilege survives and the power to assert or waive the privilege is held by the new management.

Under the third scenario, when a corporation which no longer exists and there is no successor-in-interest, there is no one who can assert the privilege and therefore any former attorney-client privilege

held by the entity ceases to exist.³ *See Sec. & Exch. Comm'n v. Pence*, No. 17-23744-MC-MORENO, 2017 WL 5624271, at *3 n.3 (S.D. Fla. Nov. 20, 2017) ("Because [the entity] is no longer active, it has no privilege to assert."); *S.E.C. v. Carrillo Huettel LLP*, No. 13 CIV. 1735 GBD, 2015 WL 1610282, at *2-*3 (S.D.N.Y. Apr. 8, 2015) ("[O]nce a corporation is truly extinct, it has lost practical ability to assert the privilege."); *Lopes v. Vieira*, 688 F. Supp. 2d 1050, 1061 (E.D. Cal.), on reconsideration, 719 F. Supp. 2d 1199 (E.D. Cal. 2010) ("[A] corporation dissolved pursuant to California law may not invoke or waive the attorney-client privilege even when it must defend itself as a party to litigation.");⁴ *Lewis v. United States*, No. 02-2958 B/AN, 2004 WL 3203121, at *3 (W.D. Tenn. Dec. 7, 2004), aff'd, No. 02-2958B, 2005 WL 1926655 (W.D. Tenn. June 20, 2005) ("[T]he attorney-client privilege could not apply because client confidentiality does not extend beyond the 'death' of a corporation."); *see also* Restatement (Third) of the Law Governing Lawyers § 73 cmt. k (2000) ("When a

---

³ Other justifications for why a defunct entity retains no attorney-client privileges include that "[a] dissolved corporation does not have the same concerns as a deceased natural person and therefore has less need for the privilege after dissolution is complete," *City of Rialto*, 492 F. Supp. 2d at 1200, and "[n]o real purpose would be served by continuing the privilege after operations cease, as the corporation would no longer have any goodwill or reputation to maintain [and] [t]he possibility that a corporation's management will hesitate to confide in legal counsel out of concern that such communication may become unprivileged after the corporation's demise is too remote and hypothetical to outweigh the countervailing policy considerations supporting discoverability" *Gilliland v. Geramita*, No. 2:05CV01059, 2006 WL 2642525, at *4 (W.D. Pa. Sept. 14, 2006); *see also Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, 2012 WL 874322, at *4 (N.D. Ill. Mar. 14, 2012) ("When the corporation is gone, so too is its interest in protecting its communications; the need to promote full and frank exchanges between an attorney and agents of his corporate clients disappears when the corporation employing those clients has departed.").

⁴ California Corporation Code § 1905(b) states "[upon dissolution] the corporate powers, rights, and privileges of the corporation shall cease.").

8

corporation or other organization has ceased to have a legal existence such that no person can act in its behalf, ordinarily the attorney-client privilege terminates.").

"[I]n determining whether a corporation still exists for privilege purposes, courts look to practical reality, not legal technicalities." *Jiaxing Super Lighting Elec. Appliance Co. v. Lunera Lighting, Inc.*, No. 18CV05091EMCTSH, 2021 WL 2711229, at *2–3 (N.D. Cal. July 1, 2021) ("Here, the practical reality is that Lunera has not existed as a business for at least two years. Bruggeman's reliance on Delaware Corporations Code § 278 is an unpersuasive attempt to rely on technical legal status. The business is dead, and it no longer possesses the attorney-client privilege."); *see also Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, No. CIV.A. 05 C 5164, 2012 WL 874322, at *4 (N.D. Ill. Mar. 14, 2012) ("[A] 'completely defunct company should not be allowed to assert privilege, regardless of whether it has technically maintained its legal status.'"); *Off. Comm. of Admin. Claimants ex rel. LTV Steel Co. v. Moran*, 802 F. Supp. 2d 947, 949 (N.D. Ill. 2011) ("To determine whether a corporation has 'died,' courts should look to practical business realities rather than technical legal status. . . . A completely defunct company should not be allowed to assert privilege, regardless of whether it has technically maintained its legal status."); *Lopes v. Vieira*, 688 F. Supp. 2d 1050, 1067-68 (E.D. Cal.), on reconsideration, 719 F. Supp. 2d 1199 (E.D. Cal. 2010) ("Valley Gold's ability to invoke or waive the attorney-client privilege does not exist in the fiction of its corporate survival, as an inactive corporation . . . ."); *United States Commodity Futures Trading Comm'n v. WeCorp, Inc.*, No. 2:09-CV-00153-PMP, 2010 WL 11530274, at *5-*6 (D. Haw. Mar. 29, 2010) (concluding "essentially . . . defunct corporation"

9

not entitled to attorney-client privilege). Relevant here, a liquidated and wound down corporation may not assert the attorney-client privilege. *See In re Behr Dayton Thermal Prod., LLC*, 298 F.R.D. 536, 542-43 (S.D. Ohio 2014).

Furthermore, a former officer or director of a non-existent entity "adds nothing to the analysis" that such entities former attorney-client privileges do not survive the entity's death. *See TAS Distrib. Co. v. Cummins Inc.*, No. 07-1141, 2009 WL 3255297, at *2 (C.D. Ill. Oct. 7, 2009); *see also Affiniti Colorado, LLC v. Kissinger & Fellman, P.C.*, 461 P.3d 606, 616-17 (Colo. App. 2019) ("Fellman asks us to create a "former general counsel" exception . . . . We decline this request because it is inconsistent with existing precedent precluding former corporate directors and managers from invoking the corporation's attorney-client privilege. And, it is inconsistent with the Supreme Court's holding that a former manager cannot assert the privilege as a shield to protect his or her own interest." (internal citations omitted)).

> 2. <u>Since Proove Biosciences, Inc. Has Been Wound Down And Liquidated, Communications With Its Former Counsel Are Not Privileged</u>

Proove Biosciences, Inc., belongs in the third scenario. After it was sued in the District Court of Utah by the entity holding its senior liens, the court appointed a Receiver over Proove on August 7, 2017. *See Leavitt Equity Partners, I, L.P. v. Proove Biosciences, Inc.*, 2020 WL 2885026 (Utah Dist. Ct. 2020). On January 1, 2020, the District Court of Utah received notice from the Receiver that Proove's assets had been liquidated and distributed to the senior lien holder and the company had been wound down. *See id.* Since Proove no longer exists and has no successors-in-interest, any attorney-client privilege it held

over communications with its former attorneys similarly no longer exists for the reasons explained in the preceding section. Accordingly, this Court should file an order allowing the parties to view the 45 documents in discovery that the Government's filter attorney identified as potentially being privileged based on the status of Proove's privilege.[5]

**III. CONCLUSION**

For the foregoing reasons, the Court should order that all parties can view the 45 documents in discovery since Proove's attorney-client privilege no longer exists.

---

[5] The Government does not currently plan to use any of those 45 documents in its case-in-chief. It anticipates, however, that some of those documents may become relevant if defendants rely on an advice-of-counsel defense. The Government plans to file a motion in limine requiring defendants to state whether they so intend and to identify any documents relevant to that defense.

Furthermore, even if the Court denies this motion, any communications between Proove and its attorneys that were voluntarily disclosed to third parties would waive the privilege as to the disclosed communication and all other such communications on the same subject. *See Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24-25 (9th Cir. 1981); *United States v. Omidi*, No. CR 17-661(A)-DMG, 2021 WL 7629899, at *3 (C.D. Cal. May 20, 2021). Here, Proove voluntarily disclosed various legal opinion letters from the Artz Law Firm to third parties, including but not limited to NSPC.

11